UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

Civil Action No. 04-102-HRW

DOUG THOMAS, PLAINTIFF,

v.   MEMORANDUM OPINION

TIM BRYANT, Individually and
in his Official Capacity as Rowan County Jailer,
et al., DEFENDANTS.

This matter is before the Court upon the Defendants' Motion for Summary Judgment [Docket No. 33]. The motion has been fully briefed and this matter is stands ripe for decision.

**I. Facts**

Plaintiff Doug Thomas began his employment as a deputy jailer at the Rowan County Detention Center in 1990. The fall of 2002 brought a hotly contested race for Rowan County Jailer between Plaintiff's supervisor, the incumbent, Don Hall and Defendant Tim Bryant. It is undisputed that Plaintiff openly and actively supported Don Hall in his bid for reelection.

Hall lost the election and Defendant Bryant assumed the position of Rowan County Jailer in January 2003. In February 2004, Plaintiff's employment was terminated.

On June 25, 2004, Plaintff filed the instant lawsuit [Docket No. 1] against Tim Bryant, individually and in his official capacity as Rowan County Jailer, Hon. Clyde A. Thomas, individually and in his official capacity as Judge-Executive of Rowan County, Fiscal Court of Rowan County, Hon. Troy Perkins, individually and in his official capacity as a Magistrate of the Fiscal Court of Rowan County, Hon. Nick Caudill, individually and in his official capacity as a Magistrate of the Fiscal Court of Rowan County, Hon. Anna Pecco, individually and in her official capacity as a Magistrate of the Fiscal Court of Rowan County and Hon. Jerry Flannery, individually and in his official capacity as a Magistrate of the Fiscal Court of Rowan County.  Plaintiff alleges that the termination of his employment was in violation of his civil rights pursuant to 42 U.S.C. §1983. Specifically, Plaintiff alleges that his employment was terminated because he supported  Defendant Tim Bryant's opponent in the 2002 election for Rowan County Jailer.  As such, Plaintiff claims that Defendants violated his right to free speech under the First and Fourteenth Amendments of the United States Constitution.

**II.  Standard of Review**

When considering a motion for summary judgment , Rule 56 of the Federal Rules of Civil Procedure dictates that the Court consider the evidence, resolve all

2

doubts and construe all inferences in favor of the nonmoving party, in this case, the Plaintiff, in an effort to determine whether any genuine issues of material fact exist. However, in a series of decisions commonly referred to as the "trilogy", *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of [a nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for" that party. Anderson, 477 U.S. at 252. In short, the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989).

**III. Analysis**

### A. Claims Against Defendant Tim Bryant

In his Complaint, Plaintiff alleges that Defendant Bryant caused his employment as deputy jailer to be terminated. Plaintiff further alleges that but for his support of Don Hall in the 2002 election, Defendant Bryant would not have terminated his employment.

i. <u>Qualified Immunity</u>

Defendant Bryant argues, at the outset, that he is entitled to qualified immunity from the constitutional claims brought against him in his individual capacity.

It is well settled that government officials enjoy a qualified immunity from constitutional and statutory claims against them. *See e.g. Saucier v. Katz*, 533 U.S. 194 (2001). As articulated by the Supreme Court in *Saucier*, a government official cannot be held personally liable for conduct that he would not have reasonably known was unconstitutional. *Saucier*, 533 U.S. at 202.

In the context of patronage dismissals - dismissal for the failure to support a particular party or candidate - once the Plaintiff has placed sufficient evidence in the record from which the trier of fact could infer that he supported the Defendant's opponent, that Defendant was aware of that support and that Defendant took some adverse employment action against Plaintiff, the burden shifts to the Defendant to show that party affiliation was an acceptable requirement for the particular job at issue. *Caudill v. Hollan*, 431 F.3d 900, 909 (6th. Cir. 2005). This exception to the general prohibition against patronage dismissals was first noted by the Supreme Court in *Branti v. Finkel*, 445 US 507, 517 (1980). The Sixth Circuit, in *McCloud v. Testa*, delineated four categories which qualified

for the *Branti*-exception:

> Category One: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
> Category Two: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;
> Category Three: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors;
> Category Four: positions that are a part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996) (footnotes omitted).

In addition to the categories set forth in *McCloud*, consideration must be given to the so-called *Rice*-cannon" which, as the Sixth Circuit recently reiterated, "requires this court to give 'some deference' to the legislature's determination as to whether a particular job is political." *Caudill*, 431 F.3d at 909, *citing Rice v. Ohio Department of Transportation*, 14 F.3d 1133, 1143 (6th Cir. 1994). If the

Defendant carries his burden by showing that the job falls with one of the *McCloud* categories or that the *Rice*-cannon applies, then qualified immunity will be bestowed and the case dismissed.

In this case, it is undisputed that Plaintff supported Defendant Bryant's opponent in the 2002 election, that Bryant was aware of the same and that Plaintiff was fired from his position as deputy jailer. As for the *McCloud* exceptions and the *Rice*-cannon, Defendant Bryant makes no argument in this regard. Nor is there any evidence in the record that deputy jailers have or exercise the type of discretion or policy making authority contemplated by *Branti* and its progeny.

Instead, Defendant Bryant makes much of the fact that there was no specific communication to him regarding the impropriety of patronage dismissals. He appears to argue that he is entitled to qualified immunity because the law concerning patronage dismissals of deputy jailers was not clearly established. The Court disagrees.

Under the doctrine of qualified immunity, government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the "clearly established" prong of the inquiry is to "insure that the officials were on

notice that their conduct was unconstitutional." *Caudill*, 431 F.3d at 911, *citing Hope v. Pelzer*, 536 U.S. 730, 741 (2002). However, as the Sixth Circuit recently warned, there need not be a specific case or ruling pertaining to the specific job:

> Were this court to require position-specific findings before it found that the law was clearly established, we would be, in effect, requiring a previous finding on the constitutionality of patronage dismissals for every government position before holding that the law was clearly established for that position. Such a finding could lead to the result that similarly situated county officials could engage in political patronage dismissals at least once with impunity, unless and until a court ruled on the constitutionality of political patronage for that particular position. Such a result is not warranted by logic or precedent.

*Caudill*, 431 F.3d at 914.

The *Caudill* Court went on to cite several cases involving the patronage dismissals of other nonpolicymaking county employees, such as teachers and deputy sheriffs. *Id.* at 912-913. The existence of these cases was enough to put the newly elected county clerk on notice that patronage dismissals of her deputy clerks were illegal. The Court reasoned,

> [i]t is difficult to understand how a reasonable official could believe that it would be constitutionally permissible to terminate a clerical employee like a deputy clerk through political patronage, when this court has held that it is not constitutionally permissible to terminate a deputy sheriff or a teacher and an administrator of a talented and gifted program through political patronage.

7

*Caudill*, 431 F.3d at 913.

Similarly, in this case, it defies reason that an official would assume that the patronage dismissal of a deputy jailer would be constitutionally permissible as it, too, is a nonpolicymaking, part clerical, part administrative position, much like the jobs referred to in *Caudill*.

As for a specific communication warning him against patronage dismissals, Defendant Bryant ignores the plain language of the Rowan County Administrative Code which provides, in relevant part, in the section entitled "Purpose":

> Assuring treatment of applicants and employees in all aspects of personnel administration without regard to **political affiliation**, disability, race, cor, age, national origin, sex, religion, or any other status protected by applicable law; and
> Assuring that employees are **protected against coercion for partisan political purpose** and are prohibited from using their official authority for the purpose of interfering with or affecting the results of an election or nomination for office.

(Docket No. 39, Exhibit F, Rowan County Administrative Code, pg. 16, emphasis added).

The language of the Rowan County Code bears striking similarity to the language of a memo authored by the county attorney in *Caudill v. Hollan*, warning newly elected county executives against patronage dismissals. In *Caudill*, the court found the memo to be relevant to the question of notice and whether a right

was "clearly established." *Caudill*, 431 F.3d at 914. Here, the Rowan County Code clearly prohibits adverse employment action on the basis of political affiliation and specifically warns against political coercion.

In *Caudill*, the memo was circulated to new county executives, such as the defendant in that case. Here, as the Rowan County Code contains the job duties of employees supervised by Defendant Bryant, including that of deputy jailer, it is abundantly reasonable to charge with him knowledge of the same.

Given the case precedent and the plain language of the Rowan County Code, the Court finds that a reasonable official would have been on notice that patronage dismissals of deputy jailers were prohibited. Thus, Defendant Bryant is not entitled to qualified immunity for the claims asserted against him in his individual capacity.

### ii. Official Capacity Claims

In order to maintain a suit against Defendant Bryant in his official capacity as Rowan County Jailer, Plaintiff must show that he had the final authority to establish official policy with respect to the hiring and firing of his employees. *See generally, Caudill v. Hollan*, 431 F.3d at 914. Notably, in their dispositive motion, Defendants plainly state that "the act of termination was the sole decision of the Rowan County Jailer - both factually and legally, " thereby affirming

Defendant Bryant's authority to terminate the Plaintiff [Docket No. 33, pg. 13]. Based upon the record, the Court finds that Defendant Bryant is not immune from the suit brought against him in his official capacity as Rowan County Jailer.

### iii.  Issues of Material Fact

Having established that Defendant Bryant is not immune from suit, the Court now considers the record before it to determine the viability of Plaintiff's claims or if Defendant Bryant is entitled to summary judgment.

Defendants argue that Plaintff was fired for "good cause."  In support of their argument, Defendants point out several instances of alleged poor job performance on behalf of Plaintiff.  In their dispositive motion, Defendants refer to nine separate occasions when Plaintiff was "written up" while working for Defendant Bryant.  Defendants further urge that the fourteenth month gap between Defendant Bryant's election and the termination of Plaintiff's employment belies Plaintiff's contention of retaliation based upon his support of Defendant Bryant's opponent.

In his response to Defendants' Motion for Summary Judgment, Plaintiff refutes the charges of misconduct and poor work performance with references to deposition testimony, his own as well as that of others.  As for the fourteen month time span between Defendant Bryant's election and his firing, Plaintiff contends

10

that it is not sufficient to preclude a causal connection but, rather further evidence of a campaign of retaliation against him.

The record in this case represents a classic he said-he said scenario, replete was factual disputes, culminating in the ultimate query: whether the termination of Plaintiff's employment was motivated by his support of Don Hall in the 2002 election or whether, as Defendants maintain, Plaintiff was fired for good cause. The Court finds that Plaintff has adequately responded to Defendants' motion by providing the Court with more than a scintilla of evidence in support of his case, thereby precluding summary judgment in favor of Defendant Tim Bryant.

### B. Claims Against the Remaining Defendants

Plaintiff has named Hon. Clyde A. Thomas, individually and in his official capacity as Judge-Executive of Rowan County, Fiscal Court of Rowan County, Hon. Troy Perkins, individually and in his official capacity as a Magistrate of the Fiscal Court of Rowan County, Hon. Nick Caudill, individually and in his official capacity as a Magistrate of the Fiscal Court of Rowan County, Hon. Anna Pecco, individually and in her official capacity as a Magistrate of the Fiscal Court of Rowan County and Hon. Jerry Flannery, individually and in his official capacity as a Magistrate of the Fiscal Court of Rowan County as Defendants in this matter.

Although the County Judge Executive has the authority to appoint,

supervise, suspend and remove county personnel, this power does not appear to extend to employees of the jail.  KRS 67.710.  Plaintiff has not provided the Court with any authority to the contrary.  Nor does the Complaint contain specific allegations against Defendant Troy Perkins.

The remaining Defendants are the Rowan County Fiscal Court and the Magistrates of the Fiscal Court.   Plaintiff maintains that the Fiscal Court retains some sort of administrative oversight over the county jailer but fails to point to the source of that authority.

As for the individual Magistrates of the Fiscal Court, again, the Complaint is devoid of specific allegations against these Defendants.  Moreover, they do not have the power to nominate or appoint employees of the county jail.

Given these Defendants' complete lack of involvement in the decisions of hiring, firing or retaining jail employees, the Court can divine no set of facts or circumstances which would entitle the Plaintiff to relief against these Defendants.

**IV.   Conclusion**

Accordingly, **IT IS HEREBY ORDERED**:

(1) that Defendant's Motion for Summary Judgement [Docket No. 33] be **SUSTAINED** with regard to the claims against  Hon. Clyde A. Thomas, individually and in his official capacity as Judge-Executive

of Rowan County, Fiscal Court of Rowan County, Hon. Troy Perkins, individually and in his official capacity as a Magistrate of the Fiscal Court of Rowan County, Hon. Nick Caudill, individually and in his official capacity as a Magistrate of the Fiscal Court of Rowan County, Hon. Anna Pecco, individually and in her official capacity as a Magistrate of the Fiscal Court of Rowan County and Hon. Jerry Flannery, individually and in his official capacity as a Magistrate of the Fiscal Court of Rowan County and

(2) that Defendant's Motion for Summary Judgement [Docket No. 33] be **OVERRULED** with regard to the claims against Tim Bryant, individually and in his official capacity as Rowan County Jailer.

It is **FURTHER ORDERED** that the parties submit a **Status Report** to the Court within **Fifteen (15) Days** of entry of this Order with regard to the status of discovery in this case and when this matter will be ready for trial.

This March 21, 2006.



Signed By:
<u>Henry R Wilhoit Jr.</u>
United States District Judge

13